# SUPERIOR COURT,

## SEPTEMBER TERM,

## 1885.

———•———

FLINN & JACKSON *v.* EDWARD C. FENNIMORE.

*Sheriff's Return on fi. fa.—Levy—Inventory and Appraisement.*

In New Castle County a sheriff's return of a *fieri facias* was "levied on goods and chattels as per inventory and appraisement annexed." The inventory and appraisement was made by the sheriff alone and had a memorandum at the foot thereof by the defendant in the writ acknowledging the same to be a true list and appraisement of his property. It appeared that such an inventory and appraisement of the property and return of the writ had long been the practice in said county. The *levy held* sufficient and binding.

(*New Castle, September 22, 1885.*)

PETITION for application of proceeds of sheriff's sale.

It has long been the practice in all the counties of this State for the sheriff to levy writs of *fieri facias* on the goods and chattels of the defendants in them soon after they come to hand, by endorsing on the writ the words levied on the goods and chattels, and annexing to it an inventory and appraisement of them, prepared or adopted by the sheriff himself, and when there is no actual seizure of the goods by him under the writ, this constitutes the levy of it on them.

The return of the *fi. fa.* was "levied on goods and chattels as per inventory and appraisement annexed" by the sheriff, and at the foot of the inventory there was an endorsement by the defendant in the *fi. fa.* acknowledging the same to be a true list and appraisement of his goods. A subsequent *fi. fa.* was issued on the

judgment of another against the defendant, and levied on the same goods and chattels, and also on some additional goods not included in the first levy. A *venditioni exponas* was afterwards issued on the first levy, and the goods were sold at the same time upon it and on the second *fi. fa.*, and the counsel for the latter claiming the proceeds of the sale to be applicable to it, the sheriff had brought the money into court for distribution.

*Davis* for the subsequent *fi. fa.* creditors. The inventory and appraisement made in the levy of a *fi. fa.* on goods and chattels must be by two judicious persons under oath or affirmation when they remain unsold on the return day of the writ. Rev. Code, 685, Sec. 47; *Hargadine v. Ford*, 5 Houst., 393. And that is the inventory and the appraisement that is the levy. *Sipple v. Scotten*, 1 Harr., 107. Constructive possession must be open and in public view. *Lowery v. Coulter*, 9 Pa., 399; *Duncan's Appeal*, 37 Pa., 500; *Minor v. Smith, et al.*, 13 Ohio, 79. In the first levy the appraisement of the goods, except what was made by the sheriff, was made by the defendant in the *fi. fa.* An agreement, however, between a debtor and sheriff binds the former, but not subsequent execution creditors. *Duncan's Appeal*, 37 Pa., 501, 502; *Lowery v. Coulter*, 9 Pa., 352.

*Austin Harrington* for the first execution creditor. The first *fi. fa.* in this case was issued September 30th, 1884, and was returned at the following term of the court "levied on goods and chattels, as per inventory and appraisement annexed," by the sheriff without the intervention of any actual appraisers, and in lieu of the certificate of such appraisers; and there was an endorsement by the defendant in the *fi. fa.* at the foot of the inventory acknowledging the same to be a true list and appraisement of his goods, and thereupon a *venditioni exponas*, No. 113, May Term, 1885, was issued, and under it and sundry other writs including that for which the counsel for the petitioner appear, a sale of the goods so levied on, was afterwards made by the present sheriff, and the proceeds of it were paid into court by him on his petition, a subsequent execution creditor claiming the same as legally applicable to his levy; and the question is, was the levy in this case defective and

insufficient under the circumstances, and the practice recognized in this court, for the want of an appraisement by actual and sworn appraisers of the goods?

What was a levy of an execution at common law, and what is it to be considered here in the absence of any mode whatever pre-scribed by statute for the making of an inventory and appraisement of goods and chattels in the levy of a *fi. fa.* on them by the sheriff? The only provision of the statute in regard to it being as follows: "Where the levy, or seizure, by virtue of a *fieri facias* shall have been of goods and chattels unsold at the return day, the sheriff shall annex to the writ an inventory of each article of such goods and chattels, with an appraisement of the same, duly made and certified, so that their value may be judged of." Rev. Code, 685, Sec. 47. And simple as it is, such it substantially has been since it was enacted in 1788. A levy of execution is the taking of pos-session under it of the property of a person condemned by judg-ment to pay a certain debt, and that was originally done by an actual seizure of the defendants goods by the sheriff, or by leaving them in the safe keeping of his bailiff. But that practice was changed, or was probably never adopted here; on the contrary, the levy became constructive generally in our practice by the sheriff's leaving the goods with the defendant, and designating by an inven-tory of them what goods the execution had been levied on, or con-structively seized by him under it, and then returning it with the writ; but the inventory was unnecessary where there was an actual seizure of the goods followed by a sale of them under the *fi. fa. Snell on Sheriff*, 194, 4 Com. Dig. Execution, C. 5; *Watts v. Cleve-land*, 3 E. D. Smith (N. Y.), 553. The levy being nothing more than the seizure of the goods by the sheriff under the execution, these requisites must be measured by what is necessarily incident to the designation of the goods seized. Hence it was that the practice grew up to return an inventory of the goods seized or levied on. *2 Paine and Duer's Practice*, 334. The inventory is not the levy; it is merely the evidence of what goods are included in the levy.

Following the practice of making the inventory, the sheriff being responsible for the goods levied, it was entirely proper that they should be appraised. But by a failure to have them appraised in any special form or manner, no one could be damnified except

first, the sheriff, who in case of liability for the loss of the goods would be thereby protected upon the question as to the value of them; secondly, the defendant in the writ, who thereby has the value ascertained of the goods taken from him under it; and thirdly, the execution creditor and plaintiff in the writ in case he should wish to sue the sheriff for his failure to sell the goods, and to have the value of them thereby ascertained before their loss. None of these parties, however, are objecting to the sufficiency of the levy involved in this case. A subsequent execution creditor has no interest in the appraisement of the goods levied under a prior *fi. fa.* at the suit of another judgment creditor, for he can have the same goods levied and appraised under his *fi. fa.* and may force a sale under it subject to the prior levy as to any and all of the goods embraced in both of the levys. The goods and chattels of the defendant, Fennimore, were bound by the *fi. fa.* of the plaintiffs, Flinn and Jackson, from the moment it came to the hands of the sheriff, as it was levied on the goods in question within sixty days thereafter by him. In making the levy he was not bound to take the goods into his actual possession, but his levy of the execution on them was evidenced by the inventory made by him at that time, and gave him the constructive possession of them from that time. The leaving of them in the hands of the defendant made him, therefore, the bailee of the sheriff, and responsible to him for the forthcoming of them. *Weatherby v. Covington,* 49 Amer. Dec., 623; *Butler v. Maynard & Peck,* 11 Wend., 548. And the levy was accordingly complete before the proceeding of making the inventory and appraisement could of course be carried out.

The provision of the statute already given contemplates this, and it has been decided in our courts that the levy is made by the constructive seizure of the goods evidenced by the inventory of the sheriff; for in the case of *Hargadine v. Ford,* 5 Houst., 380, the court said; "We are of opinion, and say to you (the jury) that the sheriff's certificate and inventory purporting to have been made on the ninth day of July, 1872, constituted such seizure and levy." But in that case the appraisement of the goods inventoried by the sworn appraisers was not made until the 31st day of August following. The concluding language of the charge to the jury in that

case, does not qualify that opinion or the definition of a levy before given in it, but merely gives a reason for this directory provision of the statute prescribing a duty to be performed by the sheriff, not as part of the act of making a levy, or in making a levy, but to be performed by him afterwards, and after the levy had been made, or the goods had been levied on by him, and then only when they remain unsold by him up to the return day of the execution at the ensuing term of the court. The provision itself, therefore, necessarily imports that the sheriff must have made a levy on the goods before this further official act and duty with regard to them in such a case is to be performed by him. And a valid and sufficient levy having thus been made by the late sheriff under the *fi. fa.* of the plaintiffs on the goods and chattels of the defendant in time to complete and establish the lien of it upon them from the time it came to his hands, no subsequent neglect of official duty or irregularity on his part with respect to it on the return of the writ and the levy to the court, can legally invalidate it. Nor could he, either by design or neglect, legally undo what he had before legally done in such a case. *3 Ch. Genl. Pr.*, 524.

But statutory provisions of this character have been held by courts of law in this, as well as other states, to be directory merely, and not mandatory, and we have in this State an early case of this kind in point in which it was so held in the old Court of Common Pleas in Kent county, at the May Term, 1815, furnished by the reporter in a foot note to the case of *Pyle v. McMonagle*, 2 Harr. 468, as that of *Thomas W. Rogers v. James Lofland*, with reference to another provision of a similar character in the same early statutes from which this is substantially copied, as he had before remarked, in which it was further provided, among other things, that where the levy of a *fi. fa.* should be returned as made subject to prior executions, the sheriff should in his return set forth, as well the names of the plaintiffs, in such prior executions as should have come to his hands, as the sums thereby to be levied, *2 Del. Laws*, 927 ; and in relation to which it was held by the court that it would support the return of a sheriff of a levy made subject to prior executions, although such return did not pursue that provision of the statute, in setting forth the names of the parties in such prior executions, and the sums thereby to be levied ; because, as

Booth, Chief Justice, added in announcing the opinion, the sheriff's have never in any of the counties attended to these provisions, and the setting aside resurns made conformable to a practice of twenty-seven years standing, would produce the most terrible consequences.

The goods of the defendants in the execution became bound by it from the moment it went into the hands of the sheriff, and as soon as it was levied on them they were in his constructive possession without a seizure of them, or any inventory or appraisement had been made of them by him, for the inventory was not the levy on the goods mentioned in it, but only the evidence of it. The levy was therefore complete before the formality of the inventory and appraisement could be carried out.

But suppose for the sake of argument that the construction of the statute should be as contended for on the other side, may not the plaintiff in the execution waive the appraisement of the goods levied on by sworn appraisers, and accept the appraisement of them by the defendant in the execution, or consent that the sheriff may accept from him both his inventory and appraisement of the goods? Both by the established practice in this State, and on general authority elsewhere, undoubtedly he may. If it is done, no subsequent execution creditor without also consenting to it, can be bound by it, or concluded from levying on other goods of the defendant not included in such inventory and appraisement, as well as on all his goods included in it, nor could he be barred by it of his action against the sheriff for any loss sustained by reason of his failure to levy on all the goods of the defendant legally subject to his execution, and consequently no other person can be injured by it in such a case even, than the execution creditor or any other creditor consenting to it. *Caldwell's Admrs. et al. v. Fifield & Mathews,* 4 Lab., 150; *Dean v. Thatcher,* 3 Broom, 470.

From an examination of the records of this court for a long period of time in relation to the practice in this county, it appears that in a large majority of the levies of writs of *fieri facias* on goods and chattels, the inventory and appraisement of the goods levied on is furnished the sheriff by the defendant in the execution, and in precisely the same form in which they were furnished to the sheriff in this case. Such a practice has grown up and been recognized by our courts, and to subvert or unsettle it at this late day

might seriously affect all land titles acquired under sheriff sales; the validity of which depend on the legality of a prior sale under a *fi. fa.* of the defendant's personal estate.

When there is an actual seizure of the goods, or a taking of them into his actual custody and possession by the sheriff under the *fi. fa.* that constitutes the levy of it upon them, and the act itself constitutes the evidence of it without any inventory or appraisement of them, but as this is not generally done in our practice by Sheriff's in levying such executions on goods, but is only constructively done in contemplation of law by the sheriff's annexing to his writ at once, or soon after it comes to his hands, an inventory and appraisement of the goods and chattels of the defendant, prepared or procured by him at the time without the intervention of sworn appraisers until a later period in the proceeding, this inventory and appraisement becomes for the time being (the goods in the meanwhile usually continuing in the actual possession of the defendant) the best, if not the only evidence, of the goods and chattels thus levied on, as well as of the value of each article of them included in the inventory and appraisement, and in such case being the only means of ascertaining and specifying the goods and chattels so constructively seized and taken in execution under the writ by the sheriff, that such inventory and appraisement made by him in the inception of its execution, not only became the best evidence of, but was even early ruled by the court to constitute the levy itself of the *fi. fa.* on the goods, and that the lien of a levy under a *fi. fa.* is limited to the property ascertained by the inventory and appraisement. *Sipple v. Scotten*, 1 Harr., 107; *Farmers' Bank et. al. v. Massey*, 1 Harr., 186; *Hargadine v. Ford*, 5 Houst., 380.

THE COURT, on being informed that such had long been the practice of making levy of writs of *fi. fa.* on goods and chattels in this county, and of inventories and appraisements of them returned by sheriff, held the levy of the first *fi. fa.* in this case to be sufficient and binding, and directed the money arising from the sales of the goods and chattels on which it had been levied, should be first applied to the payment of it.

COMEGYS, C. J., dissenting.